### ARTHUR RILEY BIRD V. THE STATE.

No. 21334. Delivered January 15, 1941.

Rehearing Denied February 19, 1941.

The opinion states the case.

*R. B. Hood,* of Weatherford, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is an attempt to commit robbery by assault. The punishment assessed is confinement in the State penitentiary for a term of eight years.

The State's evidence, briefly stated, shows that on the 4th day of December, 1938, G. H. Johnson, the injured party, received a written request from Ted Belmont of Fort Worth, Texas, to meet him at the Labor Temple on that evening, as he (Belmont) desired to pay him (Johnson) what he owed him. Johnson left his home near Weatherford about 4:00 P. M., went to Fort Worth and met Belmont at the designated place, where Belmont paid him $38.00. Johnson then started on his return trip to Weatherford, but when he reached "Cowboy Bill's Place" he stopped and drank a bottle of beer. During the time he was at "Cowboy Bill's Place," the appellant and his wife came in. When Johnson left, they followed him to within a short distance of Weatherford where his (Johnson's) car ceased functioning for want of fuel. Appellant and his wife drove their car along side of Johnson's and inquired of him what his trouble was. He told them that he was out of gasoline. Appellant offered to go back to a filling-station some two or three hundred yards away to get some gasoline and did go. He left his wife standing on the side of the road opposite Johnson's car. Appellant soon returned, stating that the service station did not have any container in which to send the gasoline. Johnson then walked to the service station and obtained one gallon of gasoline in a jug while appellant and his wife remained in their car near where Johnson's car was parked. When Johnson returned with the gasoline and was attempting to pour it into the gasoline tank, appellant struck him several licks on the head with a hammer which rendered him unconscious. When Johnson regained consciousness, his head was bleeding profusely. His pocket-book was lying on or near his face and his money was missing. He managed to get back to the filling-station where he immediately told the owner thereof that he had been assaulted and robbed. The officers were notified of the occurrence and immediately responded to the summons. Johnson was taken to a hospital where he received medical attention. The State also offered in evidence appellant's purported voluntary confession.

Appellant took the witness-stand and admitted that he struck Johnson with a hammer on the night in question but contended that he did so because Johnson had insulted his (appellant's) wife at the beer tavern of which she had informed him; that he then made up his mind to follow Johnson and give him a good whipping; that after they had overtaken Johnson and learned that he was out of gasoline, he offered to go to the filling-station and get some gasoline for him and did go,

but was unable to obtain a container in which to bring it back to Johnson's car. Appellant's wife testified that when her husband went to get some gasoline for Johnson he left her standing on the side of the highway opposite Johnson's car; that during the absence of her husband Johnson again made an indecent proposition to her; that after her husband returned without any gasoline and Johnson had started to the filling-station to get some himself she informed the appellant of Johnson's conduct and insult towards her. Appellant further testified that when his wife informed him of this last insult he made up his mind to whip Johnson and did so at the time and place in question without any intent to commit robbery, and that he did not take any money from the person of Johnson.

Appellant's first complaint is that the court erred in over-ruling his motion to quash the indictment on the ground that it is vague, indefinite and does not charge in what manner and by what means the assault, if any, was committed; that it does not apprise the defendant of what he will be required to meet in the proof. Omitting the formal parts, the indictment reads as follows:

"* * * that Arthur Riley Bird on or about the 5th day of December, One Thousand Nine Hundred and Thirty-eight, (A. D., 1938), and anterior to the presentment of this indictment, in the County of Parker and State of Texas, did then and there unlawfully in and upon G. H. Johnson make an assault and did then and there by said assault and by violence fraudulently and against the will of the said G. H. Johnson take from the person and possession of the said G. H. Johnson Thirty ($30.00) Dollars in money, the same being the property of the said G. H. Johnson and with the intent then and there to deprive the said G. H. Johnson of the value of the same and to appropriate it to the use of him the said Arthur Riley Bird, etc."

The offense may be committed by an assault or violence or by putting the victim in fear of life or serious bodily injury for the purpose of fraudulently taking from him or his possession any property with the intent to appropriate the same to the use of him, the taker. See Art. 1163, P. C., 1925. In case of robbery by assault, or violence or both, it is not necessary to set out in the indictment the means used. This is only necessary where the use of firearms or other deadly weapon was used in the commission of the offense and the extreme punishment is sought.

By Bill of Exception No. 2 appellant complains of the action

of the trial court in declining to submit to the jury his special requested charges to the effect that unless the jury believed from the evidence beyond a reasonable doubt that the purported confession of the appellant offered in evidence was voluntary, then they should not consider it for any purpose. We find in the court's main charge, to which no objection was made, an instruction similar to those requested by appellant. Therefore, it was not necessary to give appellant's requested charges as it would have been but a repetition of the court's instruction on the subject.

By Bill of Exception No. 3 appellant complains of the trial court's action in declining to submit to the jury his Special Charge No. 3. We note that the court in his main charge, to which no objection was interposed, gave an instruction similar to the one requested by appellant.

Bill of Exception No. 6 reflects the following occurrence: While G. H. Johnson, the injured party, was testifying for the State, he was asked by the County Attorney the following question: "Where were you struck?", to which he replied:

"On top of the head and I fell along with the running board of the pick-up. I fell lengthwise with the running board. When I fell on the ground that time I realized that something like high-jackers had me."

Appellant objected to this testimony because it was an opinion and conclusion of the witness and was not a statement of any fact, and that his opinion and conclusion would not be admissible against the defendant. The objection was overruled and the appellant excepted.

We observe from the record that this was not all the testimony given by Johnson, the injured party. He further testified that he was struck on the head while pouring gasoline into his truck; that he dropped down on the running board; that as he tried to straighten up, another lick hit him on the top of the head and he fell lengthwise with the running-board; that he hollered and crawled under his pick-up; that he was pulled by his left foot from under the truck; that he was then struck again until he had to give up; that while lying down he felt his hip pocket rip; that he then turned over with his head towards appellant's car where he could see the man who was about two steps away; that he heard something hit the pavement near his face; that he looked at it and saw it was his pocket-book.

The fact that Johnson realized that something like high-jackers had him was a logical and reasonable deduction from the facts within his knowledge and the circumstances surrounding him at the time. These were facts within his knowledge which would indicate that he was being high-jacked. Under the circumstances, we are of opinion that the bill reflects no reversible error.

Bill of Exception No. 7 shows that appellant objected to the introduction of a post card which Mr. Belmont had written to the injured party requesting Johnson to meet him at the Labor Temple in Fort Worth on the afternoon in question; that he (Belmont) desired to pay Johnson what he owed him. Appellant objected to the introduction of the post card upon the ground that it did not appear to ever have been mailed; that it did not show where it came from; that it was hearsay and an ex parte statement. The court overruled the objection and we see no error in such ruling. Johnson, to whom the card was sent, testified without objection to everything stated on the card. It is well settled in this State that when testimony is introduced without objection which is similar to that objected to no reversible error is shown. Clayton v. State, 138 S. W. (2d) 1084.

Bill of Exception No. 8 complains of the testimony given by Johnson, the injured party, to the effect that in looking over his checks he found two of them had been cashed, prior to the alleged robbery, at Cowboy Bill's Beer Tavern. Appellant objected to said testimony because it was at a different time and wholly immaterial to any issue in the case and was prejudicial to the rights of the defendant. We think this testimony was admissible. It appears from the record that appellant offered to show and did prove that Johnson, on the night in question, desired to get a check cashed at Cowboy Bill's Beer Tavern, but that the owner (Mr. Herring) declined to cash the check. The purpose of this testimony on the part of appellant was to show that Johnson did not have any money when he left Cowboy Bill's Beer Tavern and therefore had no money when the alleged assault was committed. Johnson denied that he sought to cash a check and offered this testimony to show that on two different occasions in the past Mr. Herring had cashed checks for him. This tended to corroborate and sustain Johnson in his contention that he made no attempt and made no request on the night in question to have a check cashed. Moreover, it appears from the record that Mr. Herring, the owner of Cowboy Bill's Beer Tavern, testified without objection that he had theretofore on

two occasions cashed checks for Johnson. It is a well-established rule in this State that when there is testimony introduced without objection which is similar to that objected to that no reversible error is shown. See Clayton v. State, 138 S. W. (2d) 1084; Martinez v. State, 140 S. W. (2d) 187, and cases there cited.

Bill of Exception No. 9 reflects the following: While Mrs. Almena Bullock, the owner of the service station, was testifying she was asked by the prosecuting attorney if Johnson, the alleged injured party, came to her place of business a second time on the night in question and if so, whether she had a conversation with him relative to his bleeding head, to which appellant objected because it was not in the presence of the defendant, was too remote, was no part of the res gestae and was hearsay. The objection was overruled and the appellant excepted. Homer Wright, who was at Mrs. Bullock's place of business at the time, was also asked if he was present when Johnson came up with his head bleeding and if he heard what Johnson said, to which defendant again objected for the same reasons stated in his objection to the testimony of Mrs. Bullock. The objections were overruled by the court and both witnesses were permitted to testify that when Johnson arrived at the filling-station he said: "He got my money, but he did not get it all." We think this was clearly a res gestae statement and admissible as such.

Bill of Exception No. 10 complains of the action of the court in declining to permit the State to ask Dr. Fyke if it was not a fact that Johnson told him that he had received some of the wounds on his head while on a drunken spree in Fort Worth, to which the witness answered, "No." Thereupon counsel for the defendant propounded the following question: "Did Johnson tell you that or did some one else tell you?" The witness answered: "He just told me last week." Thereupon counsel for defendant made the further inquiry: "Didn't Johnson tell you that scar on his head had been there for some time?" whereupon the court said: "We won't go into that at this time." Then counsel for the defendant asked the witness: "If recently, very recently, you were called on by the officers in this town and county to make an examination of Johnson (the witness) to determine whether or not he was drunk and you pronounced him drunk?" The State objected and the court sustained the objection, whereupon defendant duly excepted.

This bill is not entitled to consideration inasmuch as it is multifarious, containing three separate and distinct questions, not related to the same subject-matter. Whether or not Johnson

was drunk at any time after the commission of the offense certainly had no bearing upon any issue in the case and the objection thereto was properly sustained.

By Bill of Exception No. 11 appellant complains of the action of the trial court in permitting the State to offer in evidence the purported voluntary confession of the defendant, to which he objected on the ground that it was obtained by force, threats and fraud. Before admitting the confessoin in evidence the court heard testimony relative thereto. The officer who arrested the appellant and also the one to whom the confession was made testified that no force, threats or fraud were resorted to by them, or either of them, to induce the defendant to make the confession; that it was freely and voluntarily made after he had been duly warned that any statement which he made could be used in evidence against him on the trial for the offense to which it related. The court then admitted the purported confession but instructed the jury that if they believed from the evidence that the purported confession offered in evidence was made by the defendant as a result of force, threats and fraud, they should not consider it for any purpose. We think that the procedure pursued by the court was in conformity with the rule announced by this court in the following cases: Anderson v. State, 87 Texas Cr. R. 230; Wilson v. State, 103 Texas Cr. R. 403.

What we have said with reference to Bill of Exception No. 10 applies with equal force to Bill No. 12. However, the bill is qualified by the court, who states in his qualification that the only objection made by appellant was, "We object to that," without stating any ground of objection. In view of the court's qualification the bill is wholly deficient. See Simms v. State, 67 Texas Cr. R. 98, (148 S. W. 786).

In the case of Fisher v. State, 1 S. W. (2d) 301, this court said:

"It is the function of this court to determine whether, in receiving the evidence over the objection made, the trial court was in error, and unless the evidence is obviously inadmissible for any purpose, the bill complaining of its receipt must state the ground of objection."

Bill of Exception No. 13 disclosed the following occurrence: While the prosecuting attorney was cross-examining the wife of the appellant he held in his hand some written instruments which showed that she had been reporting to the matron of the Police Department of the City of Fort Worth every week and

to the doctor. Appellant objected thereto because the same were ex part statements and hearsay. These documents were not offered in evidence but were merely referred to by the prosecuting attorney in formulating his questions to the witness. She, in substance and effect, confirmed the statements contained in the documents. Consequently the appellant's objections are without merit.

Bill of Exception No. 14 fails to disclose any reversible error and for that reason is overruled without discussion.

By Bill of Exception No. 15 appellant complains of the action of the trial court in permitting the District Attorney on cross-examination of the appellant to ask him if he had not been indicted by the Grand Jury of Tarrant County for burglary and for theft of chickens, to which appellant objected on the ground that it was too remote and did not throw any light on any issue in the case, was prejudicial to the rights of the defendant, and because the evidence showed that said two cases had been dismissed. This testimony was not too remote. It was admissible for the purpose of affecting the credibility of the witness, and the court in his charge to the jury limited said testimony to that purpose only.

It was the defendant's theory that he struck Johnson at the time and place charged in the indictment because of an insult to his (defendant's) wife, and to support this theory he offered his wife as a witness. She testified that Johnson proposed to her that she go to Mineral Wells with him for a good time; that he first made this proposition to her at Cowboy Bill's Beer Tavern, of which she informed her husband; and again, during the time her husband had gone to the service station to get some gasoline for Johnson. Thereupon, the State asked her if she was not a common prostitute and if she was not required under an ordinance of the City of Fort Worth to report every ten days to the matron of the Police Department. It was further shown that she had stated to two officers that she was "hustling" and that her husband knew it. We think that this testimony was germane to that elicited by appellant. It tended to show that his defensive theory was a fabrication. It would seem unreasonable that a woman who pursued the avocation of a prostitute should become offended at a proposition for sexual intercourse; and it seems equally unreasonable that a man who knows that his wife is pursuing such an avocation with his approval should become highly enraged when informed by his wife that the injured party had solicited sexual favors from

her. The two are incompatible and irreconcilable. We think that the testimony was admissible under the case of Wood v. State, 31 Texas Cr. R. 571.

Bill of Exception No. 16 reflects that while the witness, G. T. Hawkins, a policeman of the City of Fort Worth, was testifying for the State, he was asked: "Did you and another officer recently go up there to this hotel where Bird and his wife lived and talk to her?" to which he replied in the affirmative. He was then asked: "What was the purpose of going up there?" to which he replied: "To check up on Mrs. Bird's blood test. When they have veneral diseases, they have to report each week, and I don't think she had reported and we had gone up there to see why." Appellant objected to this testimony on the ground that Mrs. Bird had not been interrogated by defendant on any such matters; that it was immaterial to any issue in the case and could only serve to prejudice the minds of the jury against appellant. The court qualified the bill and in his qualification states that appellant merely objected without stating any ground of objection. Appellant accepted the bill as qualified and is therefore bound thereby. A bill of exception to the admission of evidence must state the grounds of objection; a mere objection without stating any legal grounds is insufficient unless the evidence objected to is obviously inadmissible for any purpose. See Tex. Jur., Vol. 4, p. 306,, sec. 213, and authorities there cited.

Appellant complains of the following remark by the District Attorney in his closing argument to the jury:

"My opinion is that the defendant should be given a sentence of twenty-five years," to which appellant objected and requested a special instruction to the jury to disregard the same and not consider it for any purpose, which instruction was refused. Appellant does not claim that the facts adduced upon the trial did not justify the remark.

In the case of Stalcup v. State, 92 S. W. (2d) 443, the district attorney, in his closing argument, used the following language:

"I am serious in what I am telling you, and I am thoroughly sold on the State's side of the case, and I actually believe what I am saying, and I believe that this jury should inflict the death penalty."

In disposing of that question this court said:

"The bill fails to show that counsel who made the argument

had any knowledge of the case, save that obtained from the evidence. The argument can reasonably be construed in no other light than an expression from counsel that in view of such evidence the death penalty should be inflicted. We see no error in this, (citing Marinkovich v. State, 96 Texas Cr. R. 59, 255 S. W. 734)."

See, also, Jackson v. State, 63 Texas Cr. R. 351 (358); McCully v. State, 118 Texas Cr. R. 562; Scott v. State, 79 Texas Cr. R. 474; Woods v. State, 119 Texas Cr. R. 101.

In the present instance, there is nothing in the bill which shows that the argument of the district attorney and the con·clusion which he expressed were not reasonable deductions from the testimony adduced.

All other matters complained of have been ·considered by us and are deemed to be without merit.

No error of a reversible nature having been discovered in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

After carefully re-examining the record in the light of appellant's motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.